FILED
2023 Mar-06  PM 05:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT

# A

## Henderson, Brooke

| | |
|---|---|
| **From:** | Henderson, Brooke |
| **Sent:** | Friday, March 3, 2023 4:35 PM |
| **To:** | rmcneill@wmwfirm.com |
| **Cc:** | Goldfarb, Jon C.; Smith, Will; Malmat, Christina |
| **Subject:** | Mitchell v. Smith, et al. |
| **Attachments:** | Response to Rule 11 Correspondence.pdf |

Good afternoon,

Please see attached.

Thanks,



**Brooke Henderson**, *Paralegal to Jon C. Goldfarb, L. William Smith, and Christina M. Malmat.*
The Kress Building
301 19th Street North · Birmingham, AL 35203
Direct Dial | Text Message: **205-314-0589**
Fax: **205-314-0789**
bhenderson@wigginschilds.com · www.wigginschilds.com

# WIGGINS CHILDS
## PANTAZIS FISHER
## GOLDFARB
### Advocates & Litigators

THE KRESS BUILDING · 301–19TH STREET NORTH · BIRMINGHAM, ALABAMA 35203
205–314–0500 MAIN · 205–254–1500 FAX · www.wigginschilds.com

ROBERT L. WIGGINS, JR.
DENNIS G. PANTAZIS
ANN K.WIGGINS
SAMUEL FISHER
DEBORAH A. MATTISON
JON C. GOLDFARB
GREGORY O. WIGGINS
ROCCO CALAMUSA, JR
BRIAN CLARK
RUSSELL W. ADAMS
CRAIG L. LOWELL
CANDIS A. McGOWAN
TEMPLE D. TRUEBLOOD
H. WALLACE BLIZZARD
KEVIN W. JENT
JENNIFER WIGGINS SMITH
ROBERT J. CAMP
RACHEL LEE McGINLEY
JOSHUA R. GALE∗
L. WILLIAM SMITH
D.G. PANTAZIS JR.
SIDNEY JACKSON
PATRICK L. PANTAZIS
LACEY DANLEY
CHRISTINA MALMAT
LIESELOTTE CARMEN–BURKS
ERIC C. SHEFFER
NICKI L. LAWSEN

TIMOTHY B. FLEMING∗
TERRILL W. SANDERS
OF COUNSEL
∗Not Licensed in Alabama

ROBERT F. CHILDS, JR.
(1947–2018)

March 3, 2023

<u>**VIA EMAIL**</u>
J. Randall McNeill
Webb McNeill Walker PC
One Commerce Street, Suite 700
Montgomery, AL 36101
rmcneill@wmwfirm.com

  Re: Mitchell v. Smith, et al.

Dear Randall:

  We are in receipt of your proposed Rule 11 motion and accompanying correspondence. We take our ethical obligations very seriously. Your proposed Rule 11 motion is baseless, misstates facts, and overlooks undisputed evidence of egregious deliberate indifference.

  First, your letter and proposed motion overlook the blatant falsehood that started this case. Speaking on behalf of Sheriff Nick Smith, TJ Armstrong falsely told the press that Tony Mitchell was "alert and conscious" when he left the Walker County Jail immediately prior to arriving at Walker County Baptist Hospital with an internal body temperature of seventy-two degrees or lower. This was undisputedly false, as shown by the video that was later provided to the family depicting deputies carrying Tony's apparently lifeless body out of the jail that morning. TJ Armstrong also provided false information to the family as alleged in the complaint. I have not seen anywhere that the Sheriff has corrected these material false statements to the public and to the family. I urge the Sheriff to issue an immediate retraction and explain why false information was provided to the public and to the family regarding Tony's condition.

  In addition to the video showing Tony's apparently lifeless body being carried through the sally port by deputies to a sheriff's department vehicle, direct video evidence establishes the deliberate indifference of the named defendants during the hours when it would still have been possible to save his life. Prior to being transported to Walker County Jail where he had an internal body temperature of seventy-two degrees Fahrenheit or lower, Tony can be seen on video at various points over a period of approximately five hours on the morning of January 26, from around 4:00 AM until around 9:00 AM, lying on the concrete floor of a cell in the holding area, his body apparently surrounded by trash, while various corrections officers and nursing staff venture over to view him. In one of the videos, corrections officers can be seen laughing as Tony lies naked on the bare concrete floor behind him. If this is not sadistic

March 3, 2023
Page 2

behavior, I don't know what is. These videos depicting Tony lying naked on a bare concrete floor in obvious severe medical distress are also a textbook illustration of deliberate indifference.

I note that you offer no factual dispute regarding our extensive allegations of what the video evidence shows occurred during those five hours of deliberate indifference. The refusal of corrections officers and medical staff to call an ambulance during these five hours, coupled with the false statements made by Armstrong about Tony being "alert and conscious" when he left the jail, are additional strong circumstantial evidence of guilt.

Instead of offering any alternate explanation of Tony's severely hypothermic condition and the deliberate indifference of corrections officers and medical staff as depicted in the videos, your letter disputes the reasonable inferences to be drawn as to how Tony came to be in a fatally severe hypothermic condition. But you offer no information that would provide any plausible alternative explanation other than being exposed to frigid environmental conditions. A footnote on page 3 of your proposed motion appears to be the main point on which you factually dispute the allegations in the complaint. From that footnote, it appears that you take issue with the complaint "assum[ing] that Mitchell's temperature was properly taken at the hospital." However, this does not appear to me to be a fact reasonably in dispute, or one even reasonably subject to dispute. And in any event, it is hardly a Rule 11 violation for counsel to rely on a physician's measurement of rectal body temperature in a hospital environment and on the physician's opinion as to the likely cause of death.

Your proposed motion states that Plaintiff's counsel lacks evidence that Tony was put in a freezer. This also is untrue. But first, let's be clear what the complaint actually alleges: it states that Tony was "likely" placed "in the jail kitchen's walk-in freezer or similar frigid environment for an extended time." Contrary to your assertion, there is ample circumstantial evidence to show that Tony was exposed to a frigidly cold environment during the last twenty-four hours of his life. As stated in the complaint, at 6:00 AM on the morning of January 25, 2022, when Karen Kelly went off her shift, Tony was awake and talkative in his isolation cell and not in any evident distress. By the time he arrived at Walker Baptist Hospital on the morning of January 26, his body temperature had plummeted to seventy-two degrees Fahrenheit or even lower. In the absence of extreme environmental cold, no medical condition can explain an over twenty-degree-Fahrenheit loss of body temperature in such a short time for a person who remains alive. The extreme drop in body temperature shows that Tony was exposed to a frigid environment during these hours.

From the videos we have (which begin on the 26th at around 4:00 AM), the booking cells do not visually appear to be a frigid environment. At the time of the filing of the complaint, the only frigid environment Plaintiff's counsel was aware of was the jail kitchen freezer. Plaintiff's counsel has also learned of another location in the jail where there allegedly is a walk-in cooler. But there can be no mistake: Tony's body temperature did not fall to seventy-two degrees or lower under room temperature conditions. Depending on climate conditions in the booking area, it is even possible that the "similar frigid environment" was, at least for certain periods of time, the cell in the booking area itself. Discovery will be needed on these and other issues.

March 3, 2023
Page 3

Your letter states that videos "prove Mitchell was never placed in a freezer" and that he "was removed from the booking area only twice – once to be taken to court for his initial appearance and again to be taken to the hospital." You invite us to "review these videos" either at your office or at the Sheriff's office. We very much would like to review the videos, but your proposed timeline of within twenty-one days from receipt of your letter and proposed Rule 11 motion is not sufficient time for us to review two weeks of video, even if we had that video now, which we do not. Nor does our schedule allow for us to go or send someone to a location other than our office to review over two weeks of footage. Moreover, our review of the videos will need to include submitting them to an expert to confirm, as a starting point, that there are no gaps or other irregularities and that the footage provided is in fact complete for the period of Mr. Mitchell's incarceration, January 12 – January 26, 2023. As such, we request that you produce all the preserved video to us immediately to expedite this process.

Even before receiving your letter, we intended to file an amended complaint adding certain defendants who were included in the facts but left off the caption, making clear that the Estate has now been opened and that the Administratrix is adopting the pleading, and alleging additional or corrected facts to the extent that new information has come to our attention since the filing of the complaint. As part of that process, again, we are eager to consider all video that has been preserved to ensure that the allegations are correct and complete. To ensure that we have as many relevant facts as possible, please immediately produce all preserved video footage, including all body camera footage from the evening of January 25-January 26. We have also requested our client's jail medical records; please immediately produce those, including all notes made by the nurses. I understand that the nurses' notes may indicate that they recognized Mr. Mitchell was in dire medical distress and needed to be transported to the hospital without delay. I would like to include that information in the amended complaint if that is accurate, but I must have those medicals to verify that fact. Finally, please produce all incident reports relating to Mr. Mitchell. Your letter also references an allegation that Tony was tased by Karen Kelly; please produce the taser download that would show this, and please ensure that the taser downloads from Mr. Mitchell's tasing on January 15 are also preserved. We intend to ask for an early onsite inspection in this case and believe this would be appropriate at the earliest possible time; please let us know when you can facilitate that visit. Please also produce all GPS information for the vehicle that transported Tony to Walker Baptist Hospital.

Thank you for your attention to the above matters. Your allegations of a Rule 11 violation are baseless, but if you choose to file your proposed motion, I trust that you will attach a copy of this letter. In the meantime, we look forward to you producing the information requested above. Once we have had a chance to review these documents and information, we will certainly revisit the allegations of the complaint and determine whether any changes or corrections are needed.

Respectfully Submitted,

*/s/ Jon C. Goldfarb*

Jon C. Goldfarb
L. William Smith
Christina Malmat
Attorneys for Plaintiff