FILED

2023 May-12  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MARGARET MITCHELL, AS ADMINISTRATRIX OF THE ESTATE OF ANTHONY DON MITCHELL**<br><br>**Plaintiff,**<br><br>***v.***<br><br>**SHERIFF NICK SMITH, IN HIS INDIVIDUAL CAPACITY, JAIL ADMINISTRATOR JUSTIN WHITE, CORRECTIONS OFFICERS ARTHUR "TJ" ARMSTRONG, DENZEL MITCHELL, ARCELIA JOTTIE TIDWELL, BRAXTON KEE, BAILEY GANEY, KATHERINE CLINGAN, JACOB SMITH, JEREMY FARLEY, RICHARD HOLTZMAN, BENJAMIN SHOEMAKER, MORGAN MADISON, DAYTON WAKEFIELD,  JOSHUA JONES, QCHC, INC., NURSE PRACTITIONER ALEISHA HERRON, NURSE BRAD ALLRED, AND INVESTIGATOR CARL CARPENTER**<br><br>**Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>**CIVIL ACTION NUMBER:**<br>**2:23-cv-00182-ACA**<br><br>**CONTESTED** |

## THE INDIVIDUAL DEFENDANTS' PARTIAL MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF STATE AND FEDERAL CRIMINAL AND ADMINISTRATIVE INVESTIGATIONS

The individual Defendants respectfully request this Court to grant this partial motion to stay certain proceedings in this action until the ongoing state and federal criminal investigations and administrative investigations (The Alabama Nursing Board) have been concluded.[1]

This action arises in part out of the alleged failure to provide medical care to Plaintiff's deceased, Anthony Don "Tony" Mitchell, whom, according to the Second Amended Complaint [Doc. 55.], was in the custody of the Walker County Jail in January 2023.

Quality Corrections Health Care, Inc. (QCHC) contracted with Walker County to provide medical care through its medical staff. Aleisha Herron, CRNP, and Brad Allred, LPN were the two QCHC employees providing medical services during the two weeks Mitchell was incarcerated and have been sued. Plaintiff also alleges, among other things, that the County placed Mitchell in a cold environment which caused him to die of hypothermia.

George Martin has confirmed that the U.S. Attorney's Office, as well as the F.B.I. through Mark Blumberg, is conducting a criminal investigation of Defendants. The State, through the Alabama Law Enforcement Agency, has also confirmed it is

---

[1] Defendants are asking only for a stay of Defendants' depositions and the right to plead the Fifth Amendment privilege as to any other discovery without waiving their Fifth Amendment privilege. Only the nurses have administrative investigations pending.

participating in that investigation. Thus far, six nurses' interviews have been conducted. Once these investigations are complete, the agencies will decide whether to pursue criminal charges or clear them of wrongdoing. [Ex. A]

In addition, the Alabama Nursing Board is investigating Board complaints against both Allred and Herron based upon a lay person sending the Plaintiff's Original Complaint to the Board.[2] [Ex. B.]   The nurses' attorney has been interviewed by Mr. Scott Nickerson regarding both Complaints. However, the investigation has not concluded to our knowledge.

In addition, the F.B.I. has contacted the Walker County Sheriff personnel to conduct interviews.

If Defendants are required to choose between taking the Fifth or testifying, either choice will negatively impact one or both  matters. The obvious negative impact is the prejudice in the civil case if Defendants take the Fifth Amendment Privilege during their depositions. The inference to be drawn is that they are guilty. However, if they testify, that testimony may be used against them in the criminal investigation.

---

[2] Although Plaintiff has now filed an Amended Complaint (the "facts" of which Defendants still contest), egregious damage was caused to Defendants by the undisputedly false Original Complaint. These investigations, prompted by that Complaint only scratch the surface of the harm caused to Defendants. Defendants make a point of this because of the unfairness of forcing them to choose between testifying or taking the Fifth when the allegations prompting the investigations in the first place are baseless.

The fact that the nurse Defendants have been interviewed by the F.B.I. is not relevant to this issue as those unrecorded interviews are confidential. They can only be used in a prosecution of the Defendants for perjury, making a false statement, or obstruction of justice. [Ex. A] An example would be to cross examine the Defendants in a closed door, confidential Grand Jury proceeding. Matters before the Grand Jury are presumptively secret. Fed R. Crim. P. Rule 6(e); *Stewart v. State,* 314 So. 2d 313 (Ala. Crim. App. 1975).

## MEMORANDUM OF LAW

Consistent with their inherent power to control their dockets and to ensure the fair adjudication of cases, District Courts have broad discretion in deciding whether to stay proceedings, *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936) (finding that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket"); *CTI-Container Leasing Corp. v. Uiterwyk Corp.,* 685 F.2d 1284, 1288 (11th Cir. 1982) ("The inherent discretionary authority of the district  court to stay litigation pending the outcome of related proceeding in another forum is not questioned.") A court must decide to stay a civil proceeding pending resolution of related criminal proceedings when "special circumstances" so require in the "interests of justice." *United States v. Lot 5, Fox Grove, Alachua County,* 23 F.3d 359, 364 (11th Cir. 1994) (citing *United States v. Kordel,* 397 U.S. 1, 12 n.27 (1970). Indeed, a court may stay civil discovery when

there are parallel civil and criminal proceedings against the same defendant and participation in civil discovery would implicate the defendant's Fifth Amendment privilege. *See Wehling v. Columbia Broadcasting Sys.,* 608 F.2d 1084, 1087-89 (5th Cir. 1980)[3], *see also Volmar Distributors, Inc. v. New York Post Co., Inc.,* 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

A partial stay is warranted in this case because the underlying incident and the individual defendants are subjects of ongoing parallel criminal and administrative investigations and meet the "special circumstances" requirement in the interest of judgment."

## A.  "Special Circumstances"

To determine whether "special circumstances" exist to warrant a stay, courts balance the interests of the parties, the courts and the public, including such considerations as:

> "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the Defendants have been indicted; (3) the private interest of the Plaintiffs in proceeding expeditiously weighed against the prejudice to Plaintiffs caused by delay; (4) the private interests of and burden on the Defendants; (5) the interests of the courts; and (6) the public interest."

---

[3] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207-09 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981.

*Chao v. Fleming,* 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) (citation omitted).

Although many factors may be relevant, "the similarity of the issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." *Dominguez v. Hartford Fin. Servs.,* 530 F. Supp. 2d 902, 906-07 (S.D. Tex. 2008); *see also Chao,* 498 F. Supp. 2d at 1039 (degree of overlap is "the most important factor" because absent such overlap there would be no need for a stay.)

### 1.  <u>The Extent to Which the Issues in the Criminal Case Overlap with Those Presented in the Civil Case</u>

The Plaintiff's Second Amended Complaint alleges the medical staff was deliberately indifferent to Mitchell's medical needs during his incarceration allegedly by not fully assessing him or requesting the County to transfer him to the emergency department earlier.

The Plaintiff alleges the County prevented Mitchell from being assessed, caused him to die of hypothermia, and failed to feed and hydrate him contributing to his death. The undersigned, McCallum, sat through the nurses' interviews attended by the Department of Justice; F.B.I.; Deputy U.S. Attorney, and ALEA. While the specific information discussed in the interviews are confidential, the nature of the interviews parallel the Plaintiff's Complaint.

Not only do the criminal investigations parallel the civil lawsuit, according to Nickerson, the Nursing Board's investigation was prompted by an Auburn resident sending the Plaintiff's Original Complaint to the Board. No other document was submitted. Nickerson  has since been provided Plaintiff's subsequent Complaints. However, the Original Complaint sent by a random Facebook user who did not know the Defendants or truth of these allegations prompted the Board investigation. Therefore, it is clear that the Board's investigation overlaps some aspects of the civil case which remain in Plaintiff's Complaints.

## 2.  **The Status of the Case, Including Whether the Defendants Have Been Indicted**

The fact that criminal charges have not been filed does not mean the court should deny a stay when the government is investigating potential criminal conduct. The right to assert ones' privilege against self-incrimination does not depend on the likelihood, but upon the possibility of prosecution. *Slagowski v. Central Wash. Asphalt,* 291 F.R.D. 563 (D. Nev. July 2, 2013) (citing *Hoffman v. United States,* 341 U.S. 479 (1951).

A stay may be granted when Defendants have not, but may choose to assert their Fifth Amendment rights, which *may* lead to an adverse judgment against Defendants. *Kinsey v. Aledda,* 2018 WL 11352485 (S.D. Fla. 2018); *Young v. Miami*

*Dade-City,* 217, F. Supp. 3d 1353, 1355 (S.D. Fla. 2016); *Perkins v. City of Miami Beach,* No. 14-DIV-21923 D.E. 56 at 3 (S.D. Fla. Aug. 5, 2014) 3.

### 3.   **The Private Interest of the Plaintiffs in Proceeding Expeditiously Weighed Against the Prejudice to Plaintiffs Caused by Delay and**
### 4.   **The Private Interests of and Burden on the Defendants**

In balancing the interests of the parties, the prejudice to Defendants by giving sworn testimony in their depositions outweighs any prejudice to Plaintiff by a partial stay as requested. If fact, the case will proceed quicker if the Court allows other discovery to proceed without causing a waiver of Defendants' Fifth Amendment rights than it would if Defendants chose to assert their Fifth Amendment rights to deposition questions. If the Motion for Partial Stay is denied at the current stage of the proceedings, Defendants would be forced to ask for a stay at the time the case is set for trial due to the prejudice of the jury inference that Defendants are guilty based upon their   asserting privilege. The Court can revisit the issue if the criminal investigation is lengthy.

Any relief to which the Plaintiff would be entitled at the end of this case would be available. In addition, the statute of limitations did not start to run until January 2023.

### 5.   **The Interest of the Courts**

The convenience of the Court in the management of its cases, and the efficient use of judicial resources is to be considered.

Based on Defendants' proposal for a partial stay, this Court would not suffer from an inefficient use of its judicial resources or management of the case. In fact, the proposal may very well add to the efficient handling of the case and deter delay. For example, if Defendants' choose to assert their Fifth Amendment privilege in depositions and the criminal investigations resolve with no indictments, it is quite possible that those depositions will be retaken incurring in unnecessary time and expenses.

Additionally, without a partial stay, the Court would likely become embroiled in discovery disputes as the parties are forced to litigate the scope of any protections and privileges that attach to discovery by virtue of the open criminal investigation.

Any inconvenience to the Court would be outweighed by the Court's interest in fairness. "Although promptness in judicial administration is highly desirable, delay may sometimes be necessary to the mission of doing justice. We are all too often reminded that 'justice delayed is justice denied.' But it is equally true that in some situations, 'justice rushed is justice crushed.'" *McMullen v. Bay Ship Mgmt.,* 335 F. 3d 215, 219 (3d Cir. 2003) (reversing dismissal where Plaintiff asserted privilege and the district court refused to grant a stay.) A stay here would allow the Court to fairly adjudicate the action on its merits once all evidence becomes available while avoiding duplicative proceedings.

### 6.  **The Interests of the Public Would Not be Adversely Affected if the Stay is Granted**

Lastly, the interests of the public and persons not parties to the civil litigation would not be adversely affected by a partial stay. The public has  a strong interest in permitting the investigations to move forward in the ordinary course of business, with the attendant secrecy that accompanies criminal investigations.

In considering the interest of the public, courts balance the interest of the public in expeditious resolution of civil litigation against the public's interest in ensuring the criminal process is not subverted by the ongoing civil case. "Where there are parallel criminal and civil proceedings, 'the criminal case is of primary importance to the public,' whereas the civil case, which may result in monetary damages, 'is not of an equally pressing nature.'" Whether the public interest will favor either party will depend on the unique facts of a particular case, but typically, the "protection of Defendant's constitutional rights against self-incrimination is the more important consideration." Similarly, whether any nonparty interest is implicated will depend on whether  a nonparty stands to benefit from the civil litigation or is otherwise impacted by it.

As the Supreme Court has held, a Plaintiff should be required to withstand some delay "if the public welfare or convenience will thereby be promoted."

*Landis,* 299 U.S. at 256; *see also Campbell v. Eastland,* 307 F.2d 478, 487 (5ᵗʰ Cir. 1962). ("Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.") Staying the proceedings here "would benefit the public by allowing the Government to conduct a complete, unimpeded, confidential investigation into potential criminal activity." *SEC v. Healthsouth Corp.,* 261 F.Supp.2d 1298, 1325 (N.D. Ala. 2003).

## CONCLUSION

All of the relevant factors in this case weigh in favor of granting a stay of these proceedings. Defendants meet the "special circumstances" required by the law as outlined above. The denial of a partial stay would substantially and irreparably prejudice the individual Defendants because they would be required to litigate this case by either pleading the Fifth, and hence, resulting in a negative inference in the Civil case, or testifying in depositions creating a public record which could be used against them in the criminal investigation.

Therefore, the Court should partially stay depositions of the Defendants until the related criminal and administrative investigative proceedings are concluded.

Defendants also respectfully ask this Court to allow all non-privileged discovery to continue without it resulting in a waiver of Defendants' Fifth Amendment rights.

In accordance with the Local Rules, undersigned counsel conferred with Plaintiff's attorneys, via email, who advised that they opposed any stay of proceedings.

Dated: May 12, 2023.

Respectfully Submitted,

/s/ Eric D. Hoaglund
Eric D. Hoaglund
*Attorneys for Defendants Aleisha Herron, Brad Allred*

**OF COUNSEL:**
LaBella S. McCallum
McCallum, Hoaglund, & McCallum, LLP
905 Montgomery Highway, Suite 201
Vestavia Hills, Alabama 35216
Telephone No.: (205) 824-7767
Facsimile No.:  (205) 824-7768
Email:   edh@mhmfirm.com
         lsm@mhmfirm.com

_**/s/ J. Randall McNeill (with permission)**_
J. Randall McNeill
Counsel for County Defendants

**OF COUNSEL:**
WEBB MCNEILL WALKER PC
Josh Willis
Jamie H. Kidd Frawley
One Commerce Street, Suite 700
Post Office Box 238
Montgomery, AL 36101-0238
(334) 262-1850 T
(334) 262-1889 F
rmcneill@wmwfirm.com
jwillis@wmwfirm.com
jfrawley@wmwfirm.com

## CERTIFICATE OF SERVICE

This is to certify that on May 12, 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which automatically notifies counsel as follows:

Jon C. Goldfarb
Christina Maxine Malmat
L. Williams Smith
Wiggins Childs Pantazis Fischer
& Goldfarb
301 19th Street North
The Kress Building
Birmingham, Alabama 35203
Telephone:  (205) 314-0500
Email: jcg@wigginschilds.com
       cmalmat@wigginschilds.com
       wsmith@wigginschilds.com

*Attorneys for Plaintiff*

James C. King
King, Wiley, and Williams, LLC
1824 3rd Avenue South
Jasper, Alabama 35501
Telephone:  (225) 275-0162
Jasper, Alabama 35501
Email: jimmy@jasperlawyers.com
*Attorney for Aleisha Herron*

Randy McNeill
Josh Willis
Jamie H. Kidd Frawley
Webb, McNeill, Walker PC
One Commerce Street, Suite 700
Montgomery, Alabama  36102
Telephone: (334) 262-1850
Email: rmcneill@wmwfirm.com
      jwillis@wmwfirm.com
      jfrawley@wmwfirm.com
*Attorneys for Defendants*
*Sheriff Nick Smith, Jail Administrator*
*Justin White, Correctional Officers*
*Arthur "TJ" Armstrong, Denzel*
*Mitchell, Arcelia Jottie Tidwell,*
*Braxton, Kee, Bailey Ganey,*
*Katherine Clingan, Jacob Smith,*
*Jeremy Farley, Richard Holtzman*
*Benjamin Shoemaker, Morgan*
*Madison, Dayton Wakefield,*
*Investigator Carl Carpenter*
*Carpenter, Justin White, Arcelia*
*Jottie Tidwell, Morgan Madison, and*
*Joshua Jones*

*/s/ Eric D. Hoaglund*
      COUNSEL